Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E, #1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

CARNESHIA MOLAND, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

BANK OF AMERICA, N.A.,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

## INTRODUCTION

1. This putative class action challenges Bank of America, N.A.'s unlawful retention of earnings BOA has realized on funds owned by Plaintiff and the Class which BOA holds as "special deposits." Under California law, only the owner of the special deposit is entitled to such earnings, yet BOA keeps these earnings for itself.

2. Plaintiff and the Class are recipients of electronic benefit payments ("Benefits") from the government of California's Employment Development Department ("EDD"). These Benefits include unemployment, disability, and Paid Family Leave payments.

3. Prior to February 15, 2024, the EDD designated BOA as its financial agent for the provision of EDD benefits. The California Employment Development Department Prepaid Debit Card ("EDD Card") is a prepaid debit card offered by BOA to California benefit recipients (the "Benefit Recipients") who received their benefits electronically.

4. Benefit payments made to holders of the EDD Card are deposited into accounts maintained for the Benefit Recipients by BOA.

5. BOA receives billions of dollars of Benefit Payments each year (the "Funds"). While the Funds were at BOA and before they were withdrawn by Benefit Recipients, BOA earned interest and other investment income on the Funds, through its utilization of this additional capital (the "Earnings"). On information and belief, these Earnings exceed tens of millions of dollars per year.

6. BOA's contractual relationship with Benefit Recipients is governed by written "Terms and Conditions." Benefit Recipients were required to agree to the Terms and Conditions to use their EDD Card and access their Funds.

7. BOA promised in the Terms and Conditions that it would comply with applicable California law in the performance of its responsibilities. Under California law, interest or other earnings on a fund of money are the property of the owner of the fund. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1201 (9th Cir. 1998).

8. Under California law, because the Benefit Payments are for an exact amount to be returned to the Benefits Recipients, to be paid for a specific purpose, and BOA does not pay interest in consideration for use of the funds, the Benefit Payments are "special deposits." Accordingly, they always remain the property of the Benefit Recipients while the Funds are held by BOA, and BOA is not entitled to derive any benefit from their use.

9. By seizing the Earnings, BOA (1) converted the property of the Benefit Recipients to its own use in violation of California law, (2) breached its fiduciary duties to Plaintiff and the Class, (3) committed unfair and deceptive acts affecting California consumers in violation of the California Unfair Competition Law, and/or (4) been unjustly enriched.

10. BOA's unjust and violative conduct has proximately caused Plaintiff and the Class to suffer injury and damage, for which BOA should be held responsible. In the alternative, BOA has been unjustly enriched by its seizure of the Earnings and should be required to disgorge those Earnings to Plaintiff and the Class.

## PARTIES

11. Plaintiff is, and at all relevant times hereto was, a resident and citizen of the State of California.

12. At all relevant times, Plaintiff was a California Employment Development Department Prepaid Debit Card account holder with BOA who had earnings unlawfully seized by BOA.

13. Defendant Bank of America, N.A. is a nationally chartered bank with its principal place of business in Charlotte, North Carolina.

## JURISDICTION & VENUE

14. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, and at least one Class member, Plaintiff, is a citizen of a state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15. This Court has personal jurisdiction over Defendant BOA because it conducts a significant amount of business in California and maintains a consistent

presence in the State of California, such that the exercise of personal jurisdiction does not offend notions of fair play and justice.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant transacts business within this judicial District and because Plaintiff was, and is, a resident of this judicial District at all times relevant to these claims such that a substantial part of the vents giving rise to Plaintiff's causes of action against Defendant arise in this judicial District, and Defendant's contract with this District are sufficient to subject it to personal jurisdiction.

## GENERAL ALLEGATIONS

### A. The EDD Program

17. Throughout the relevant period, the California EDD primarily delivered its unemployment, disability, and Paid Family Leave Benefits electronically. One way it delivered these Benefits was through the EDD Card with BOA. When applying for Benefits, applicants had to choose a payment method, including to receive payments by direct deposit to the bank or credit union account of their choice or to an EDD Card account.

18. The EDD Card offers the convenience and security of using electronic transactions for Benefit Recipients to spend and access their money rather than using cash for purchases. Benefit Recipients do not need to have a bank account to sign up for the Direct Express Card. There is no credit check or minimum balance requirement.

19. When a person signed up to receive his or her EDD benefits on the EDD Card, they would receive their payments every month without having to worry about cashing their checks or having them lost or stolen. Instead of receiving a check, the Benefit Recipients' money is automatically deposited to their EDD Card account on payment day. Cardholders can use their card to make purchases at stores that accept

Debit MasterCard, withdraw cash from Automated Teller Machines (ATMs), and get cash back when they make purchases. Cardholders can also use their debit cards online to make payments.

20. As of December of 2023, approximately 850,000 Californians were actively receiving their Benefits Payments electronically to an EDD Card. This number pales in comparison to the number of Benefits recipients at the height of the COVID-19 pandemic, where the EDD received over 14 million unemployment claims between just March and October of 2020.

21. For many of EDD Cardholders, their Benefits are the sole source of income and are essential for basic living needs. Many EDD Cardholders do not even have bank accounts.

22. The EDD Card accounts are not issued or held by the California EDD. Instead, the cards and accounts are issued and maintained by BOA. At all relevant times, BOA was the California EDD's single financial agent and the issuer of the EDD Cards for Benefit Recipients statewide. Benefit payments made to holders of the EDD Card were deposited into accounts maintained for the Benefit Recipients by BOA.

23. The Terms and Conditions agreed to by BOA and Benefit Recipients who used the EDD Card are attached hereto as **Exhibit A** and are incorporated herein by reference. The Terms and Conditions have several provisions relevant to Plaintiffs' claims in this case.

24. First, the Terms and Conditions state Benefit Recipients are the "owners" of the Funds deposited at BOA pursuant to the EDD Card program. *See* Ex. A at p.2 § 2 ("Your Account is an individually owned account").

25. Second, the Terms and Conditions state that the EDD Card accounts are special deposits, distinct from the general deposit accounts that BOA would

generally maintain in which it would retain a property right to the Funds. *See e.g.* Exhibit A ("This Agreement discloses the terms and conditions of your California Employment Development Department Prepaid Debit Card and you are not entitled to any rights or benefits given to deposit account customers or debit card holders at Bank of America, N.A"); ("Deposits to your Account may only be made by the EDD … Once funds are properly deposited and made available to you, the EDD has no rights to any funds in your Account, except as otherwise provided by law (including with respect to the Unemployment or State Disability Insurance benefits program that you participate in and rights reserved to the EDD)"); ("Any remaining unclaimed balance will be reported and remitted as unclaimed property to the appropriate state as required by state law after a period of time defined by that state's law").

26. Third, the Terms and Conditions provide that, regardless of where the Benefits Recipients reside, California law governs the Terms and Conditions. Ex. A at p. 15 § 21 ("This Agreement will be governed by the laws and regulations of the U.S. and, to the extent not so covered, by the laws and regulations of the State of California").

27. There are no federal laws or regulations which govern BOA's payment of earnings and interest on demand deposits, generally, or EDD program deposits, specifically. Accordingly, the relationship between Plaintiff and the Class, on the one hand, and BOA, on the other hand, is governed by the laws and regulations of the State of California.

**B. BOA's Earnings on Deposits into the EDD Card Accounts of Plaintiff and the Class**

28. Even though Plaintiff's and Class members' Funds in their EDD Card account are special deposits which BOA is not entitled to use, BOA nonetheless

wrongfully earned money on the Funds it maintained that were owned by Benefit Recipients.

29. Since just March of 2020, EDD reports to have paid more than $200 billion in unemployment benefits. Upon information and belief, during the relevant period, most of these Funds were distributed to Benefits Recipients through their EDD Card accounts maintained by BOA.

30. BOA has utilized these Funds for its own investment purposes, and earned interest and investment returns which it retained for itself. On information and belief, BOA realized and retained millions of dollars in Earnings annually derived from Plaintiff's and the Class's Benefits Payments.

31. BOA, like all financial institutions, funds the lending side of its business through the pooling and utilization of customer deposits. The more capital deposited at an institution, the greater its capacity to lend money and earn financial gains on the money held in the institution. *See* https://www.imf.org/external/pubs/ft/fandd/2012/03/basics.htm ("Although banks do many things, their primary role is to take in funds—called deposits—from those with money, pool them, and lend them to those who need funds. Banks are intermediaries between depositors (who lend money to the bank) and borrowers (to whom the bank lends money). The amount banks pay for deposits and the income they receive on their loans are both called interest.")

32. Upon information and belief, BOA pooled the EDD Card account Funds with the rest of its deposit assets, allowing it to use the millions (or even billions) of dollars provided by EDD to Benefits Recipients for its typical commercial endeavors and deriving substantial profits in the form of the Earnings.

33. Upon information and belief, the EDD Card accounts were not assigned unique Bank Identification Numbers or unique routing numbers, which if present

would indicate special deposits being treated distinctly from a bank's general deposits for purposes of the pooling and utilization of funds.

**C. Plaintiff and the Class are the Owners of the Funds in Their "Special Deposit" Accounts, Including the Earnings.**

34. BOA's wrongdoing is clear: the Earnings belong to the Benefit Recipients because of the unique relationship between BOA and the Benefits Recipients that is dictated by (a) the Terms and Conditions, and/or California law.

35. The EDD Card accounts maintained by BOA for the Benefit Recipients were not "ordinary" or "general" deposit accounts. Instead, they are "special" deposit accounts created for the specific purpose of providing EDD benefits to Benefits Recipients, and for which BOA provides no consideration in the form of interest, thus creating no entitlement for BOA's use of the Funds. Rather than a debtor-creditor relationship, BOA is a mere custodian of the Funds. *See Bank of Am. Nat. Tr. & Sav. Ass'n v. California Sav. & Com. Bank*, 22 P.2d 704, 709 (Cal. 1933) ("In the case of general deposit, relationship of bank and depositor is that of debtor and creditor, and funds deposited become part of bank's general assets which bank may use in conducting general banking business.").

36. In accepting these special deposits, BOA assumed a fiduciary duty to handle the Funds in accordance with their specified purpose, for the sole benefit of Benefits Recipients. This duty precluded BOA from using the deposits for its own purposes. *See Engleman v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 219 P.2d 868, 871 (Cal. App. 2d Dist. 1950) (explaining that where funds are placed in a special deposit, the bank is "not entitled to hold it … to secure another obligation").

**D. Plaintiff and the Class Own the Earnings on the Funds in their Accounts.**

37. The BOA Terms and Conditions contractually obligate BOA to comply with California law. The BOA Terms and Conditions do not explicitly address the disposition or ownership of the Earnings. The Terms and Conditions do not provide that the Earnings are the property of BOA. Accordingly, given that the governing contract is silent on the issue of the disposition or ownership of the Earnings, the ownership of the Earnings is governed by California common law, which is incorporated into the Terms and Conditions and which binds BOA.

38. "It is true that interest is said always to be an accretion to or increment to the principal fund earning it, and unless lawfully separated therefrom becomes a part thereof." *Est. of Sharp*, 95 Cal. Rptr. 816, 832 (Cal. App. 4th Dist. 1971). Thus, the common law rule that "interest follows principal" applies in California. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1201 (9th Cir. 1998). This common law rule applies where a party acts a custodian of private funds.

39. The Benefit Recipients are the owner of the Funds. California law thus imposed a duty on BOA, incorporated into its Terms and Conditions, to remit the Earnings to the Benefit Recipients.

### E. BOA has Systematically Converted the Earnings of Plaintiff and the Class.

40. Generally, a bank can't convert the funds in a demand deposit account because the bank is the owner of the funds. This is because there is a debtor-creditor relationship between a bank and its depositors. Therefore, the bank cannot convert its own funds. That is also the reason a bank has no common law duty to pay interest on those types of deposits in the absence of an agreement with the depositor, because "interest follows principal" and the bank "owns" the principal.

41. BOA's Terms and Conditions and California law provide that the Funds are, at all relevant times, including when received by BOA for custodianship,

exclusively owned by the Benefits Recipient. Nevertheless, BOA converted the Funds for its own use, and then converted the earnings of millions of dollars for which Plaintiff and the Class are properly entitled.

42. Because the common law rule that "interest follows principal" applies to these special deposits, BOA must disgorge any gains it earned from its use of the Funds. *See PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 58 Cal. Rptr. 3d 516, 524 (Cal. App. 2d Dist. 2007) (explaining that to support an action for conversion of money, a plaintiff must allege their ownership of right to possession of a specific, identifiable sum; a defendant's wrongful act toward or disposition of that sum; and damages).

43. The monetary amount of BOA's Earnings far exceeds the administrative cost of determining the amount of Earnings owed to each Benefit Recipient and crediting those Earnings to the Direct Express account of each Benefit Recipient. Moreover, because BOA knows (1) the amount of Earnings during all relevant time periods, (2) the amount of Funds deposited on behalf of each Benefit Recipient during all relevant times, and (3) the average amount of Funds maintained by BOA on behalf of each Benefit Recipient during all relevant times, the amount of Earnings owed to each Benefit Recipient for all relevant times can be readily-calculated.

**F. Plaintiff's Experience**

44. Plaintiff was approved to receive benefits from EDD in or about March of 2019. At that time, Plaintiff was provided an EDD Card and EDD Card account with BOA.

45. Plaintiff received benefits from EDD, which were deposited as special deposits in her BOA EDD Card account from approximately March of 2019 until May of 2023.

46. Plaintiff's monthly EDD special deposits were approximately $900-$1000.

47. At all relevant times, Plaintiff's EDD funds were held in a special deposit account with BOA.

48. Plaintiff has received no compensation from BOA for the Earnings derived from her Funds.

## CLASS ALLEGATIONS

49. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements. Plaintiff brings this action on behalf of the following Class:

> All person in the State of California who maintained EDD Card accounts with BOA within the relevant time period.

50. Excluded from the Class are Defendant, its subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51. The members of the Class are so numerous that joinder is impractical. The Class consists of at 850,000 individuals, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

52. Plaintiff's claims are typical of the claims of members of the Class. Plaintiffs is a member of the Class she seeks to represent, and Plaintiff was injured by the same wrongful conduct that injured the other members of the Class.

53. BOA has acted wrongfully in the same basic manner as to the entire class.

54. There are questions of law and fact common to all Class Members that predominate over any individualized questions and that will be proved using the same evidence for each member. These predominant common questions of law and fact necessitate a class action proceeding to generate common answers, drive the resolution of the litigation, and include by way of example and not limitation:

a. Whether California law governs the ownership of the Funds and the resulted Earnings;
b. Whether the accounts BOA maintained for each Benefit Recipient are "special" deposit accounts;
c. Whether the Funds are the property of the Benefit Recipients;
d. Whether the Earnings are the property of the Benefit Recipients;
e. Whether BOA owed a fiduciary duty to the Benefit Recipients;
f. Whether BOA's actions in seizing the Earnings constitutes a breach of fiduciary duty;
g. Whether BOA's actions in seizing the Earnings constitutes a conversion; and
h. Whether BOA's conduct described herein violates California's Unfair Competition Law.

55. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of complex class actions. Accordingly, the interest of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

56. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Class' claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Class could afford to

seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

57. Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

58. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

59. Defendant has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

60. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

## COUNT I

## CONVERSION

61. Plaintiff incorporates paragraphs 1-60 as if fully set forth herein.

62. BOA is in wrongful possession of the Earnings.

63. The Earnings are the property of Plaintiff and the Class.

64. BOA has wrongfully exercised dominion and control over the Earnings in violation of the right of Plaintiff and the Class.

65. The Terms and Conditions do not address the ownership of the Earnings. BOA's common law duty to remit the earnings to Plaintiff and the Class is separate and distinct from the contractual obligations BOA owes under the Terms and Conditions. A relationship exists between BOA and Plaintiff and he Class which gives rise to a legal duty without the need to enforce any contractual promise itself.

66. BOA's conduct constitutes common law conversion under California law.

67. BOA has acted knowingly and without regard to the right of Plaintiff and the Class.

68. As a direct and proximate result of the BOA's conduct, Plaintiff and the Class have suffered injury and damages.

## COUNT II
## BREACH OF FIDUCIARY DUTY

69. Plaintiff incorporates paragraphs 1-60 as if fully set forth herein.

70. When a financial institution accepts a special deposit, the acceptance of the funds creates a fiduciary duty owed to the owner of the funds.

71. Because the Funds are special deposits, BOA had a fiduciary duty to preserve the Earnings on the Funds for the benefit of Plaintiff and the Class and not divert the Earnings to its own use.

72. By seizing the Earnings, BOA breach its fiduciary duty to Plaintiff and the Class.

73. BOA has acted knowingly and without regard to the right of Plaintiff and the Class.

74. As a direct and proximate result of the BOA's breach of fiduciary duty, Plaintiff and the Class have suffered injury and damages.

## COUNT III
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
## Cal. Bus. & Prof. Code § 17200, *et seq*.

75. Plaintiff incorporates paragraphs 1-60 as if fully set forth herein.

76. The UCL defines "unfair competition" to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

77. A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

78. The UCL imposes strict liability. Plaintiff need not prove that BOA intentionally or negligently engaged in unfair business practices—but only that such practices occurred.

79. BOA's conduct described herein is "unfair" because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public. Specifically, BOA, *inter alia*:

a. Converted Plaintiff's and the Class's EDD Benefits Payments to its own use;

b. Breached its fiduciary duty to Plaintiff and the Class; and

c. Unjustly enriched itself with Earnings properly owed to Plaintiff and the Class.

80. There were reasonably available alternatives to further BOA's legitimate business interests, other than engaging in the unfair conduct described herein.

81. As a direct and proximate result of BOA's misconduct, Plaintiff and Class members have suffered actual damages, including the Earnings rightfully owed to them.

82. Plaintiff lacks an adequate remedy at law.

83. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks restitution and disgorgement as a result of the unfair business practices described above.

**COUNT IV**
**UNJUST ENRICHMENT**

84. Plaintiff incorporates paragraphs 1-60 as if fully set forth herein.

85. Plaintiff and the Class conferred a benefit upon Defendant. After all, Defendant benefitted financially from being custodian of their EDD benefits Funds, including through the fees it accrued as a result.

86. BOA appreciated and/or had knowledge of the benefit it received from Plaintiff and the Class.

87. As a bank holding Plaintiff's and the Class's special deposits, it was reasonably understood that BOA had no entitlement to use the Funds for its own purpose.

88. Defendant enriched itself by utilizing the Funds to generate its Earnings and failing to remit those Earnings to Plaintiff and the Class.

89. Under principles of equity and good conscience, BOA should not be permitted to retain the full value of the Earnings because BOA had no right to utilize the Funds.

90. Plaintiff and the Class have no adequate remedy at law.

91. Defendant should be compelled to disgorge into a common fund – for the benefit of Plaintiff and the Class – all unlawful or inequitable Earnings it received because of its misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class seek and Order:

1. Certifying the proposed Class pursuant to Rule 23;
2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;
3. Declaring the Defendant has committed the violations of law alleged herein;
4. Providing for any and all injunctive relief the Court deems appropriate;
5. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;
6. Providing for any and all equitable monetary relief the Court deems appropriate;
7. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;
8. Awarding Plaintiff their reasonable costs and expenses of suit, including attorneys' fees;
9. Awarding pre- and post-judgment interest to the extent the law allows; and
10. Providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: April 1, 2025

By: *_/s/ Scott Edelsberg_*
Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067

Tel: (305) 975-3320
Email: scott@edelsberglaw.com